J-A10016-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| CAROLINE KUSHNER | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CONEX FREIGHT, INC. AND RODNEY | : | |
| BEGGS AND JAMES D. MORRISSEY, | : | |
| INC., ESTABLISHED TRAFFIC | : | No. 662 EDA 2018 |
| CONTROL, INC.; ARMOUR & SONS | : | |
| ELECTRIC CO. | : | |
| | : | |
| | : | |
| APPEAL OF: JAMES D. MORRISSEY, | : | |
| INC. | : | |

Appeal from the Order Entered January 23, 2018
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s):  No. 150702642

| | | |
|---|---|---|
| CAROLINE KUSHNER | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CONEX FREIGHT, INC. AND RODNEY | : | |
| BEGGS AND JAMES D. MORRISSEY, | : | |
| INC., ESTABLISHED TRAFFIC | : | No. 664 EDA 2018 |
| CONTROL, INC.; ARMOUR & SONS | : | |
| ELECTRIC CO. | : | |
| | : | |
| | : | |
| APPEAL OF: ARMOUR & SONS | : | |
| ELECTRIC CO. | : | |

Appeal from the Order Entered January 23, 2018
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s):  July Term, 2015 No.: 2642

J-A10016-19

| CAROLINE KUSHNER | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CONEX FREIGHT, INC. AND RODNEY | : | No. 678 EDA 2018 |
| BEGGS, JAMES D. MORRISSEY, INC. | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| ESTABLISHED TRAFFIC CONTROL, | : | |
| INC. AND ARMOUR & SONS | : | |
| ELECTRIC CO. | : | |

Appeal from the Order Entered January 23, 2018
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s):  2642 July Term, 2015

BEFORE:  GANTMAN, P.J.E., LAZARUS, J., and OTT, J.

MEMORANDUM BY OTT, J.:                      **FILED AUGUST 19, 2019**

Caroline Kushner appeals from the Order entered on January 23, 2018, in the Court of Common Pleas of Philadelphia County denying her Post-Trial Motion for Relief and finalizing the judgment.[1]  Defendants Armour & Sons Electric (Armour) and James D. Morrissey, Inc. (Morrissey), have filed cross-appeals.  After a thorough review of the submissions by the parties, relevant law, and the certified record, we affirm in part, vacate in part, and remand for an order in conformance with this decision.

_____

[1] Technically, the appeal lies from the entry of judgment upon the resolution of the post-trial motions.  The verdict of $150,000.00 was reduced to $75,000.00 pursuant to comparative negligence.  Armour was ordered to indemnify Morrissey for the $22,500.00 that represented its portion of the damages.

- 2 -

We relate the factual and procedural history of this matter as stated in

the trial court's October 31, 2018, Pa.R.A.P. 1925(a) opinion.

On July 23, 2015, Plaintiff Caroline Kushner filed a complaint against Defendant James D. Morrissey, Inc. ("Morrissey"), Defendant Rodney Beggs ("Beggs"), and Defendant Conex Freight, Inc. ("Conex").[2]  [Kushner] claimed injuries from a motor vehicle incident on July 30, 2014.  [Kushner] alleged that a semi-trailer truck operated by [] Beggs, during the course of his employment for [Conex], rear-ended [Kushner's] motor vehicle at the intersection of Route 13 and Beaver Street (the "Intersection") in Bristol Township, Montgomery County, Pennsylvania. [Kushner] alleged that [] Beggs was liable for negligent operation of the semi-trailer truck and that his employer, Conex, was vicariously liable.  At the time of the motor vehicle incident, [] Morrissey was performing construction and renovation work at the Intersection.  [Kushner] alleged that Morrissey was negligent in this construction and renovation work, that this negligence led to the intersection's inherent danger and contributed to the motor vehicle incident, and therefore, that Morrissey was additionally liable to [Kushner] for damages.

On May 3, 2016, Morrissey filed a Motion to Join Additional Defendant Armour & Sons Electric, Co. ("Armour") alleging that Morrissey had sub-contracted with Armour to install traffic signals at the Intersection in order to redirect new traffic patterns.  On June 27, 2016, the Honorable John M. Younge granted Morrissey's Motion and on June 30, 2016, Morrissey filed a joinder complaint against Armour alleging contractual indemnification for damages and costs arising out of [Kushner's] complaint.

Jury trial was held from December 10, 2017 to December 15, 2017, whereupon the jury returned a verdict for [Kushner].  The jury awarded [Kushner] $150,000.00 in damages, but reduced the actual compensation to $75,000.00 due to [Kushner's] comparative negligence.  The jury found [Kushner] 50%

---

[2] Throughout the certified record this defendant, not a part of this appeal, is referred to as Conex Freight and Canex Freight.  Both appear to be names of trucking companies.  We will use Conex as that is the name found in the official docket of the First Judicial District as well as the name used in the complaint.

- 3 -

comparatively negligent, [] Beggs and Conex 35% jointly negligent, [] Morrissey 15% negligent, and [] Armour 0% negligent.

Morrissey filed a Motion for Post Trial Relief on December 28, 2017, seeking to compel Armour's indemnification in the amount of $22,500.00 for the verdict, and $99,468.75 for attorney's fees and costs. On January 22, 2018, Armour filed a response alleging indemnification improper because Armour was not found negligent. On January 18, 2018 (docketed January 23), this Court granted Morrissey's motion in part, compelling Armour to pay Morrissey $22,500.00 for the verdict, but denied the $99,468.75 amount for attorney's fees and costs.

On January 8, 2018, [Kushner] filed a Motion for Judgment Notwithstanding the Verdict arguing for a new trial as to liability and damages against Morrissey only. On January 18, 2018, this Court denied [Kushner's] motion.

On February 20, 2018, [Kushner] appealed this Court's Order dated January 18, 2018, to the Superior Court of Pennsylvania, and on February 27, 2018, this Court ordered [Kushner] to file a Concise Statement of Matters Complained of on Appeal pursuant to Pa.R.A.P.1925(b). [Kushner] filed a timely Statement of Matters Complained of on March 21, 2018.

On February 15, 2018, Morrissey appealed this Court's Order dated January 18, 2018 (docketed January 23), to the Superior Court of Pennsylvania, and on February 27, 2018, this Court ordered Morrissey to file a Concise Statement of Matters Complained of on Appeal pursuant to Pa.R.A.P. 1925(b). Morrissey filed a timely Statement of Matters Complained of on March 20, 2018.

On February 20, 2018, Armour appealed this Court's Order dated January 18, 2018 (docketed January 23), to the Superior Court of Pennsylvania, and on February 27, 2018 this Court ordered Armour to file a Concise Statement of Matters Complained of on Appeal pursuant to Pa.R.A.P. 1925(b). [Armour] filed a timely Statement of Matters Complained of on March 14, 2018.

Trial Court Opinion, October 31, 3018, at 1-3.

Our review of the record indicates that Kushner was stopped at a red light, behind a truck. The Conex truck was stopped behind Kushner. The light changed to green, the first truck went through the intersection, Kushner started to move into the intersection but then stopped. The Conex truck started to move into the intersection and struck the rear of the Kushner vehicle. *See* N.T. Trial, Testimony of Caroline Kushner and Rodney Beggs; video of accident.

Kushner now raises four issues for our review. She claims the trial court erred: (1) in precluding expert testimony of neuropsychologist Dr. Biester; (2) by overruling the objection made during closing arguments when counsel for Morrissey informed the jury Kushner had settled her claim against Beggs and Conex; (3) in giving an impermissible charge regarding Kushner's failure to mitigate her damages; and (4) in denying Kushner's motion for JNOV despite the dashcam video showing the semi-truck rear-ending Kushner's vehicle.

In its cross-appeal, Morrissey raises a single claim; it argues the trial court erred in failing to award it attorney's fees and costs from Armour, in addition to the award of indemnification for damages.

In its cross appeal, Armour raises a claim that is essentially the mirror of Morrissey's claim. Armour argues the trial court erred in awarding Morrissey indemnification for damages where the jury determined it had committed no negligent acts.

We will address the Morrissey/Armour issues first. Morrissey offers two contractual rationales for its claim.

Our standard of review for these issues is as follows:

"[T]he interpretation of the terms of a contract is a question of law for which our standard of review is *de novo*, and our scope of review is plenary." **McMullen v. Kutz**, 603 Pa. 602, 985 A.2d 769, 773 (2009) (citation omitted). Furthermore, it is well established that:

> [w]hen the parties have reduced their agreement to writing, the writing is to be taken to be the final expression of their intention. Where the contract evidences care in its preparation, it will be presumed that its words were employed deliberately and with intention. In determining what the parties intended by their contract, the law must look to what they clearly expressed. Courts in interpreting a contract do not assume that its language was chosen carelessly. Neither can it be assumed that the parties were ignorant of the meaning of the language employed.

**Steuert v. McChesney**, 498 Pa. 45, 444 A.2d 659, 662 (1982) (citations and quotation marks omitted).

**Andrews v. Cross Atlantic Capital Partners, Inc.**, 158 A.3d 123, 131 (Pa. Super. 2017).

First, Morrissey argues that its contract with Armour required Armour to provide primary insurance coverage for any claims arising from the subcontract. In support of its argument, Morrissey points to this clause in the addendum to the sub-contract:

> E: The Sub-Contractor further covenants and agrees to provide adequate insurance coverage for all liability which may arise from this Subcontract and to indemnify and save harmless the Contractor, its officers, agents, servants and workmen from the aforesaid liability, including workman's compensation claims; it being understood that the insurance certificate evidencing such coverage are attached hereto and made part thereof.

Morrissey Motion for Post Trial Relief, Exhibit A, Addendum, ¶ E.

- 6 -

The addendum does not require Armour provide a defense to Morrissey; it requires Armour to provide adequate liability insurance. However, no insurance certificate was attached. Further, no specific detail or clauses from an insurance policy have been referred to by Morrissey nor has the insurance policy been entered into evidence. While Morrissey claims the requirement to provide a defense is greater than the requirement to indemnify against damages, that requirement depends upon the language of the policy, which is not in evidence. The addendum clause provides no reference, much less requirement, to provide a primary defense to Morrissey for any claims of negligence levied against Morrissey. Indeed, Morrissey does not claim it tendered its defense to Armour and was refused.[3] Moreover, this aspect of Morrissey's argument is not developed in the motion for post trial relief, which contains only a passing reference to Armour's insurance policy.[4] As such, undeveloped arguments are generally considered waived.[5] Because the clause does not make reference to providing Morrissey a defense, and no insurance policy is in evidence requiring Armour to provide Morrissey a

---

[3] The joinder complaint filed by Morrissey's counsel demanded "full and immediate defense and indemnification including attorney's fees." **See** Complaint, Count IV, ¶ 28. We assume Morrissey's counsel was not demanding to be replaced by Armour's counsel of choice, but rather was seeking to be paid by Armour.

[4] **See** Paragraph 12, Morrissey's Motion for Post Trial Relief.

[5] The trial court opinion does not address this aspect of Morrissey's claim, presumably because it was not properly developed and presented to the trial court.

defense, or reimbursement for defense costs, this aspect of Morrissey's argument must fail.

The second aspect of Morrissey's argument involves the "Hold Harmless Agreement" found in the subcontract between Morrissey and Armour. Specifically, Morrissey refers to the introductory paragraph which states:

> To the fullest extent permitted by law, the Subcontractor shall indemnify and hold harmless and defend James D. Morrissey, Inc. and their agents and employees against all claims, damages, losses and expenses, including but not limited to attorney's fees, arising out of or resulting from the performance of the Work, provided that any such claim, damage, loss or expense (1) is attributable to bodily injury, sickness, disease or death, or to injury to or destruction of tangible property, including the loss of use resulting therefrom, and (2) is caused in whole or in part by any negligent act or omission of the Subcontractor, or anyone directly or indirectly employed by any of them or anyone for whose acts any of them may be liable, regardless of whether or not it is caused by James D. Morrissey, Inc.

Morrissey Motion for Post Trial Relief, Exhibit A.

Here, Morrissey argues the trial evidence showed that Armour hung the left turn signal sign and Kushner claimed that was a negligent act. Accordingly, Morrissey contends the conditions of the Hold Harmless Agreement have been met, and the agreement requires Armour pay Morrissey's attorney fees when the injury suffered was caused in any part by Armour's negligence.

The fatal flaw in this argument is that the jury did not accept Kushner's and Morrissey's proposition that Armour acted negligently. The jury determined that Armour was free from negligence. The second numbered

condition of the Hold Harmless Agreement requires a negligent act or omission from the subcontractor before indemnification is triggered. When the jury determined no such act or omission occurred, it also negated the second numbered condition. Accordingly, Armour is not required to reimburse Morrissey for their attorneys' fees and costs.

We next address Armour's argument that the trial court erred in requiring it to indemnify Morrissey $22,500.00 for the damage award against it. As discussed above, the Hold Harmless Agreement requires indemnity from the subcontractor, Armour, in the event that the damages are caused, in whole or in part, by any negligent act or omission committed by Armour. When the jury determined Armour was not negligent, it absolved Armour from any requirement to indemnify Morrissey. Because the Hold Harmless Agreement, presumably drafted by Morrissey, required a negligent act or omission by Armour to trigger its implementation, and no such act or omission took place, it was error for the trial court to impose indemnity upon Armour. Accordingly, we vacate the $22,500.00 award from Armour to Morrissey.

We now look to Kushner's arguments.

Kushner's first claim is the trial court erred in precluding the expert testimony of neuropsychologist Dr. Rosette Biester, Ph.D. Immediately prior to trial, the defense sought to preclude Dr. Biester's testimony because it was based, in part, on psychological records that had been requested by the

defense, but never delivered to them.[6]   The defense claimed their neuropsychological experts had been denied access to the documents and, therefore, were placed at a disadvantage and would be unable to respond to Kushner's proposed expert testimony.   The trial court agreed with the defenses' argument and precluded Dr. Biester's testimony.

Our standard of review for an evidentiary issue is well settled:

> The admission or exclusion of evidence is within the sound discretion of the trial court, and in reviewing a challenge to the admissibility of evidence, we will only reverse a ruling by the trial court upon a showing that it abused its discretion or committed an error of law. Thus our standard of review is very narrow.... To constitute reversible error, an evidentiary ruling must not only be erroneous, but also harmful or prejudicial to the complaining party.

*Croyle v. Smith*, 918 A.2d 142, 147 (Pa. Super. 2007) (citation omitted).

In arguing for preclusion, counsel for Morrissey posited the following:

> Your Honor, the motion we filed was a motion to preclude both Biester and Cohen primarily for the same reasons, but to piggyback on what Mr. Schaefer [counsel for Conex] was saying, it's not just the prejudice of our expert not being permitted to review the records that were relied upon by plaintiff's experts.  In this case, it's not – that wasn't the limitation of the prejudice.
>
> Not only was our neuropsychologist, Dr. Minniti, not only was she precluded from reviewing the records that were relied upon by plaintiff's expert, but she was denied an interview into those areas of inquiry to which the plaintiff's expert was able to inquire.

---

[6] Kushner had originally claimed to have suffered post traumatic stress from the accident.  However, when psychological records were not turned over to the defense, on May 4, 2016, Judge John M. Younge entered an order precluding Kushner from seeking psychological damages.  Apparently, as part of this order, the defense agreed not to seek the records.  Dr. Biester's report was not produced to defendants until after the May 4, 2016 order.

- 10 -

The plaintiff's expert was able to review the records. The plaintiff's expert, actually, Dr. Biester in a list of items that she reviewed for purposes of preparing her report, No. 10 was the records of Dr. Biju Basil. That's listed as one of the records that Dr. Biester relied upon. Not just reviewed, but relied upon.

Now the case law is very, very clear. Expert opinions are not permitted when they rely on facts that are not of record.

On three separate occasions, the defendants tried to obtain the records of Dr. Basil, three times. They were precluded three times based on, relying on the May 4th, 2016 order.

It was the reliance on that that precluded us from getting the records. But plaintiff's expert not only got them, but relied on them.

N.T. Trial, 12/11/2017, at 133-134.

In her 1925(a) opinion, the trial judge wrote:

Admitting the testimony [of Dr. Biester] would have unfairly prejudiced Defendants because none of the psychologist's records relied upon by Dr. Biester were disclosed during discovery. Thus, Defendants' experts were not able to review any of these documents when forming their opinions or drafting their reports. Further, by Plaintiff's own admission her psychological conditions were not relevant at trial.

Pa.R.A.P. 1925(a) Opinion, 10/31/2018, at 10.

Our review of Dr. Biester's report[7] shows Dr. Biester did list the records of Dr. Basil as having been reviewed. The substance of the report makes only passing reference to Dr. Basil's treatment. However, two of the four recommendations that conclude Dr. Biester's report address the need for ongoing psychiatric treatment and psychotherapy. Both of these

---

[7] *See* Morrissey's Motion in Limine, Exhibit "G".

recommendations address subjects that were precluded and apparently are derived from the review of documents the defense was not allowed to see. It is unclear, based on our review of the certified record, if or how Dr. Biester could parse her conclusions from those areas which had not been made available to the defense. Accordingly, we cannot conclude that the trial court erred in precluding the testimony of Dr. Biester. Kushner is not entitled to relief on this issue.

Next, Kushner claims the trial court erred in overruling the objection raised in closing argument when counsel for Morrissey "improperly communicated and inferred"[8] that Kushner had settled her claim against Conex and Beggs.

Counsel for Morrissey was the second defendant to present closing argument.[9] Counsel's first remarks were:

> . . . I don't know what's changed in this case. I heard on Monday like you all did that the plaintiff [sic], Mr. Beggs, was recklessly in disregard of the law, recklessly in disregard of the law. I heard it two or three times, these horrible things. And now I'm going to ask you to do the same thing I asked you on Monday and apply your common sense to all those things plaintiff just argued. Why did things change? Why is Mr. Beggs just maybe negligent in the case and James D. Morrissey is to blame for everything? Use your common sense and I think you will get to the right answer.

N.T. Trial, 12/15/2017, at 115.

---

[8] *See* Kushner's brief at 31.

[9] Counsel for Conex/Beggs was the first defendant to present closing argument.

Kushner argues the reference to the change in tactics was a "winking"[10] reference to the settlement of her claim against Conex and Beggs. Further, Kushner asserts that such reference to a settlement is a violation of 42 Pa.C.S. § 6141, which rules settlement of a personal injury claim "shall not be admissible in evidence on the trial of any matter." 42 Pa.C.S. § 6141(c).[11]

This issue has been waived for failure to raise a timely objection at trial. No objection to this comment was raised when the comment was made.[12] Rather, Kushner waited until all closing arguments had been made and then, additionally waited until the jury had been charged and had retired to begin deliberations. Only then did Kushner's counsel mention the perceived transgression. Counsel said:

> . . . The other point, Your Honor, is just to state for the record, what Mr. Donovan did in his closing is very, very improper. He did a few things. The first thing he did was he insinuated to this jury that there was a settlement between the plaintiff and Canex [sic] and Rodney Beggs. And I can get the transcript and point to it, Your Honor. That is incredibly improper and we object to it.

N.T. Trial, 12/15/2017, at 178.

---

[10] **See** Kushner's Brief at 33.

[11] Technically, section 6141(c) would not apply because closing argument by counsel is not evidence.

[12] Kushner did immediately object to another comment made during Morrissey's closing argument. **See** N.T. Trial, 12/15/2017, at 117.

This comment, made 63 pages of transcript after the allegedly offending argument and after the jury had retired to deliberate, cannot be considered a timely objection. Accordingly, this argument has been waived.[13]

Kushner's next claims the trial court erred in charging the jury regarding mitigation of damages. Kushner argues the defense withdrew its request for the charge yet the trial court still gave the charge, and also argues a timely objection was raised to the charge. Both arguments are a misrepresentation of the record. We quote the relevant portion of the charging conference:

The Court: Okay. 7.10, any objection to Mitigation of Damages?

Mr. Pansini [Plaintiff's Counsel]: I can't even find where we are.

The Court: 7.10, Number 15 on the Defense C[o]nex.

_____

[13] We also note the trial court did not even address this issue in its Pa.R.A.P. 1925(a) opinion. Further, Kushner has not attempted to explain the delay in raising the objection.

*See Commonwealth v. Gilman*, 368 A.2d 253, 256 (Pa. 1977) (untimely objection to closing argument waives objection). The latest objection we have found that was considered timely was immediately after the closing argument in question. Morrissey cited *Commonwealth v. Myrick*, 118 A.3d 449 (Pa. Super. 2015) to support this point. *See* Morrissey Appellee Brief at 40. *Myrick* is an unpublished memorandum decision that cites *Gilman*. Counsel for Morrissey failed to note they were relying upon a non-precedential decision. (A May 1, 2019, amendment to Pa.R.A.P. 126 allows a party to cite to unpublished memorandum for persuasive value, but only if said decision was issued after May 1, 2019. Morrissey's brief was filed on December 10, 2018, more than five months prior to the rule change. *Myrick* was decided in 2015, approximately 4 years prior to the rule change. Accordingly, the citation to *Myrick* is improper for multiple reasons.)

Mr. Pansini: Which one of the two are we, first alternative or second alternative?

The Court: Which one do you want me to use, first or second alternative?

Mr. Schaefer [Counsel for Conex]: I'll withdraw the whole charge.

The Court: Withdrawn.

N.T. Trial 12/15/2017, at 25.

Approximately 20 lines of transcription later, the following exchange took place:

Mr. Schaefer: Judge, I apologize, I did misspeak, and I would hate to bring us back to 7.1.

The Court: 7.1

Mr. Schaefer: When I read it I read the bottom which is surgery, but we do need the second alternative, which is the standard charge 7.1

The Court: Number 15?

Mr. Pansini: Number 15?

Mr. Schaefer: Number 15, Your Honor.

The Court: Okay, the second alternative, okay.

*Id.* at 26-27.

This exchange clearly demonstrates that counsel for Conex did not actually withdraw the standard charge for mitigation of damages and that Kushner's counsel acknowledged that fact and did not object.

On page 152 of the notes of testimony, the trial judge charged the jury regarding mitigation of damages. As noted above, on page 176, the trial judge

- 15 -

sent the jury to deliberate. On page 177, after the jury left the courtroom to begin deliberation, Kushner's counsel objected to the mitigation of damages charge. Just as with the prior claim, this delayed objection is not timely.[14] Therefore, Kushner is not entitled to relief on this claim.

Kushner's final argument is that the trial court erred in failing to grant JNOV against Morrissey where the dashcam video of the accident clearly shows the semi-truck rear-ending the Kushner car. Kushner argues that the nature of the accident represents negligence *per se* and so the jury's apportionment of negligence was inappropriate. Specifically, Kushner argues, "Indeed, we have the benefit of a video depicting the entire incident and there is no doubt that the negligence of C[o]nex Freight's tractor trailer operator far outweighs that of Ms. Kushner and that a judgment finding Caroline Kushner more negligent that C[o]nex and Co-defendant James D. Morrissey, Inc. cannot be reasonably explained." Appellant's Brief at 43-44.

Our standard of review for the denial of a motion for JNOV is as follows:

> We will reverse a trial court's grant or denial of a [JNOV] only when we find an abuse of discretion or an error of law that controlled the outcome of the case. Further, the standard of review for an appellate court is the same as that for a trial court.
>
> > There are two bases upon which a [JNOV] can be entered; one, the movant is entitled to judgment as a matter of law and/or two, the evidence is such that no two reasonable minds could disagree that the outcome should have been rendered in favor of the movant. With the first, the court reviews the record and concludes that, even with all factual

---

[14] ***See*** Pa.R.C.P. 227(b) – "Unless specially allowed by the court, all exceptions to the charge to the jury shall be taken before the jury retires."

inferences decided adverse to the movant, the law nonetheless requires a verdict in his favor. Whereas with the second, the court reviews the evidentiary record and concludes that the evidence was such that a verdict for the movant was beyond peradventure.

*United Envtl. Grp., Inc. v. GKK McKnight*, 176 A.3d 946, 959 (Pa. Super. 2017) (quotation omitted). Furthermore, we note:

The proper standard of review for an appellate court when examining the lower court's refusal to grant a [JNOV] is whether, when reading the record in the light most favorable to the verdict winner and granting that party every favorable inference therefrom, there was sufficient competent evidence to sustain the verdict. Questions of credibility and conflicts in the evidence are for the trial court to resolve and the reviewing court should not reweigh the evidence.

*Shamnoski v. PG Energy, Div. of S. Union Co.*, 579 Pa. 652, 858 A.2d 589, 593 (2004) (internal citations omitted).

*Greco v. Myers Coach Lines, Inc.*, 199 A.3d 426, 430 (Pa. Super. 2018).

After a thorough review of the certified record, we agree with the trial court's analysis.

[…] [Kushner's] motion for JNOV was without merit because the jury actually returned a favorable verdict [to Kushner].

In her January 8th, 2018, post-trial motion for JNOV, [Kushner] alleged:

"26. As the crash at issue is memorialized by a dashcam video which shows [Kushner] slowing down and stopping and then being forcefully rear-ended by a tractor[-]trailer who was accelerating at the point of impact, [Kushner] files for judgment notwithstanding the verdict and asks for a new trial with respect to liability and damages as against Defendant, James D. Morrissey, Inc."

[Kushner] further alleged:

- 17 -

> "28. [Kushner] asserts that, pursuant to Pa.R.C.P. 227.1, in this rear-end accident, [Kushner] was entitled to judgment on liability as a matter of law and/or the evidence was such that no two reasonable minds files [sic] for judgment notwithstanding the verdict and asks for a new trial with respect to liability and damages as against Defendant, James D. Morrissey, Inc."

> In this case, the facts were not so obvious that no two minds could disagree as to Morrissey's negligence. While the dashcam video footage from Beggs' semi-trial tuck did record the motor vehicle incident, the footage could not have conclusively apportioned out negligence among the Defendants; thus, the jury acted as fact finder and deliberated. In fact, [Kushner] received a favorable verdict as the jury found Morrissey 15% negligent. Therefore, [Kushner's] argument in favor of JNOV is unclear. Further, [Kushner] does not cite to any evidence or conduct [on the part of Morrissey] that would warrant entry of JNOV. Accordingly, denial of [Kushner's] request for JNOV against Morrissey was not an abuse of discretion or error of law because [Kushner] actually prevailed against Morrissey.

> Assuming, *arguendo*, that [Kushner] contends JNOV would have been entered because Morrissey should have been found more than 15% negligent, denial was still proper. JNOV would not have been proper simply because [Kushner] did not recover what *she* believed to be appropriate compensation. That is not the standard for JNOV. Here, there were material issues of fact with respect to Morrissey's negligence that reasonable minds could disagree upon and the Court was not entitled to act as a fact finder to apportion out negligence and damages. The jury properly deliberated based upon the evidence in the record and concluded that Morrissey was 15% negligent, returning a favorable verdict for [Kushner]. Therefore, denial was proper and [Kushner's] claim must fail.

Trial Court Opinion, 10/31/2018, at 14-15.

The trial court has appropriately noted that Kushner has referenced no evidence regarding Morrissey's negligence that supports a claim the jury

improperly apportioned liability against Morrissey.[15] We agree with Morrissey that Kushner did not object to the comparative negligence charge being given to the jury and so agreed that the issue was to be decided by the jury. Accordingly, we find no abuse of discretion or error of law by the trial court's denial of JNOV. Kushner is not entitled to relief on this issue.[16]

In light of the foregoing, we vacate that portion of the judgment awarding indemnity to Morrissey from Armour, and affirm the judgment in all other regards. We remand this matter to the trial court for entry of judgment in conformity with this decision. Jurisdiction relinquished.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/19/19

---

[15] Relevant to this, Paragraph 27 of Kushner's motion for post-trial relief states, _in toto_, "Notwithstanding this, the jury asserted [Kushner], was stopped at a red light when she was rear-ended, with 50% liability." Kushner's Post-Trial Motion for Relief, at 5, ¶ 27. However, the evidence showed Kushner was not actually stopped at a red light, the light was green, the truck in front of her had moved through the intersection, and she stopped in the mistaken belief her light was red. In any event, paragraph 27 clearly references the prior paragraph that detailed only Beggs' and Conex's negligence.

[16] We have already determined that the evidentiary issues raised by Kushner were without merit. These claims were the basis of a request for a new trial regarding damages. Therefore, even if a new trial had been warranted on liability, damages would not be at issue.